UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COOPER SCHULZE, *individually and on behalf of all others similarly situated*, | § § § | |
| | § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 3:20-CV-01130-X |
| | § | |
| HALLMARK FINANCIAL SERVICES, INC., NAVEEN ANAND, and JEFFERY R. PASSMORE, | § § § § | |
| | § | |
| *Defendants*. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Cooper Schulze sued Hallmark Financial Services, Inc. (Hallmark), Naveen Anand, and Jeffery R. Passmore, alleging that the defendants violated federal securities laws by making misrepresentations relating to the financial well-being of Hallmark—misrepresentations Schulze relied on when purchasing stock in the company. The defendants filed a motion to dismiss for failure to state a claim. [Doc. No. 40]. After filing an amended complaint, Schulze requested to submit supplemental evidence. [Doc. No. 44]. For the reasons below, the Court **DENIES** the request to submit supplemental evidence and **GRANTS** the motion to dismiss **WITHOUT PREJUDICE**.

## I. Factual Background

Hallmark participated in the Binding Primary Auto business. In other words, Hallmark sold insurance to its customers. As an insurer, Hallmark sought to match claims expenses with revenues from insurance premiums. Like other insurers, Hallmark is required to estimate anticipated claims expenses as an expense in the current period and as a loss reserve on its balance sheet. Therefore, the more loss reserves on a company's balance sheet, the lower the net income.

Schulze alleges that the defendants made several statements to the investing public which misrepresented the financial soundness and the quality of Hallmark's methodology with respect to loss reserves. Specifically, Schulze claims that Anand and Passmore knew of a concerted effort to arbitrarily lower loss reserves and misrepresented Hallmark's loss reserve to the public. Then, in reliance upon that misrepresentation, Schulze purchased stock in Hallmark. Eventually, once word got out about the true financial health of Hallmark, the stock price plummeted. Accordingly, Schulze sued for damages related to the reliance on the alleged misrepresentations.

## II. Legal Standard

In response to abusive private securities-fraud actions, Congress enacted the Private Securities Litigation Reform Act of 1995 (the Act).[1] The Act includes "[e]xacting pleading requirements" to curb excessive litigation.[2] To adequately plead

---

[1] 15 U.S.C. § 78u-4.

[2] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

a private securities-fraud claim, as here, the plaintiff must "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.* the defendant's intention to deceive, manipulate, or defraud."[3]

Particularity requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information or belief, the complaint shall state with particularity all facts on which that belief is formed."[4] To meet the Act's pleading requirements with regard to scienter, the "inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."[5]

To determine whether a plaintiff satisfied scienter pleading requirements in the context of Federal Rule of Civil Procedure 12(b)(6), courts must first, as with any Rule 12(b)(6) motion to dismiss, "accept all factual allegations in the complaint as true."[6]  Second, "courts must consider the complaint in its entirety," in addition to other sources courts normally examine, particularly "documents incorporated into the complaint by reference . . . and matters of which a court may take judicial notice."[7] That inquiry requires courts to determine "whether *all* the facts alleged, taken collectively, give rise to a strong inference of scienter," not merely a single allegation.[8]

---

[3] *Id.* (quotation marks omitted).

[4] 15 U.S.C. § 78u-4(b)(1).

[5] *Tellabs*, 551 U.S. at 314.

[6] *Id.* at 322.

[7] *Id.*

[8] *Id.* at 323.

Third, to decide "whether the pleaded facts give rise to a 'strong' inference of scienter," courts must consider "plausible opposing inferences."[9]

Put simply, the heightened pleading standards under the Act require plaintiffs to: (1) state the facts alleging the violation with particularity and (2) state the facts alleging scienter with particularity.  The plaintiffs must do this for every individual defendant; group pleading will not pass muster.[10]  And importantly, plaintiffs must allege that the statements at issue were false when made.[11]  Finally, regarding statements and omissions, plaintiffs "must specifically plead when a given disclosure should have been made."[12]  This is a high threshold that both includes—and exceeds—the requirements of Federal Rule of Procedure 9(b).[13]

### III. Analysis

### *Request to Submit Supplemental Evidence*

The Court first considers Schulze's motion to submit supplemental evidence, including LinkedIn profiles and Form 8-Ks.  Schulze's request contains four pieces of evidence: (1) Hallmark's January Form 8-K, (2) Hallmark's February Form 8-K,

---

[9] *Id.*

[10] *See Southland Secs. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) (finding that "the PSLRA requires the plaintiffs to distinguish among those they sue and enlighten *each defendant* as to his or her particular part in the alleged fraud") (quotation marks omitted).

[11] *Masel v. Villarreal*, 924 F.3d 734, 749 (5th Cir. 2019).

[12] *Id.*

[13] *See Tellabs*, 551 U.S. at 319 ("Prior to the enactment of the [Act], the sufficiency of a complaint for securities fraud was governed . . . by the heightened pleading standard set forth in Rule 9(b).").

(3) Stefanie Milch's[14] LinkedIn page, and (4) Chuck Stauber's[15] LinkedIn page.  Both the LinkedIn profiles and Form 8-K's concern employees leaving Hallmark Financial Services, Inc., which Schulze argues evinces scienter.  Schulze cites to *Hall v. Rent-A-Ctr., Inc.*,[16] arguing that the proximity between the resignation or termination of employees, with other evidence, can show scienter.  But in *Hall* the time between the departures and the end of the Class Period was less than three months.[17]  The principle behind permitting departures to contribute to the showing of scienter is that the resignations or departures must be suspect in some way that contributes to showing a defendant's scienter.

This principle is evident in *In re CRM Holdings, Ltd. Securities Litigation*, where the court required a plaintiff to allege facts linking the departures and the alleged fraud.[18]  Essentially, without more facts alleged, the time period between the alleged fraud and the departure must be sufficiently small to make other reasons for departure sufficiently remote.  In *CRM Holdings*, the court found that a departure more than four months after the Class Period failed to evince scienter.[19]  Here, the departures took place more than seven months after the end of the Class Period.[20]

---

[14] The Amended Complaint alleges Milch was the Vice President of Claims Litigation of Hallmark and reported to Stauber.  Doc. No. 37 at 13.

[15] The Amended Complaint alleges Stauber was the Senior Vice President and Chief Claims Officer of Hallmark and reported to Anand.  Doc. No. 37 at 13.

[16] No. 4:16-cv-00978-ALM-CMC, 2017 WL 6379334, at *12 n.8 (E.D. Tex. Dec. 14, 2017); Doc. No. 44 at 4.

[17] *Hall*, 2017 WL 6379334, at *12 n.8.

[18] No. 10 Civ. 975 RPP, 2012 WL 1646888, at *29 (S.D.N.Y. May 10, 2012).

[19] *Id.*

[20] Doc. No. 44 at 3.

So, the departures are not sufficiently close to the Class Period to evince scienter and would not affect the Court's analysis of the motion to dismiss.  Therefore, the Court **DENIES** the request to submit supplemental evidence.

### *Motion to Dismiss*

Schulze argues that the defendants made false or misleading statements on nine occasions: (1) the March 5, 2019 press release; (2) the 2018 Form 10-K; (3) the May 8, 2019 press release; (4) the May 2019 Form 10-Q; (5) the August 7, 2019 press release; (6) the August 9, 2019 Form 10-Q; (7) the November 7, 2019 press release; (8) the November 7, 2019 Form 10-Q; and (9) the November 8, 2019 conference call with Anand.

To adequately state a claim under section 10(b), a plaintiff must allege, "1) a material misrepresentation or omission; (2) scienter . . . (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) a 'causal connection between the material misrepresentation and the loss.'"[21]  Establishing scienter in these cases requires one of two elements: that defendant acted either with the (1) intent to deceive, defraud, or manipulate or (2) severe recklessness.[22] Specifically,

> [severe recklessness] is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers

---

[21] *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429 (5th Cir. 2019) (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)).

[22] *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 366 (5th Cir. 2004).

which is either known to the defendant or is so obvious that the defendant must have been aware of it.[23]

Put another way, if a plaintiff cannot sufficiently plead a defendant's intent to deceive, she must show that the defendant engaged in severe recklessness: either because he knew of the misrepresentation or because the danger of misleading buyers or sellers was so glaring that the defendant must have been aware of it.

*Confidential Witnesses*

To be considered, confidential sources must be described with enough particularity to uphold the notion that someone in the source's position would have the information pled.[24]  Even so, courts discount allegations from confidential sources in these securities actions because confidential sources do not provide an adequate basis for competing inferences to evince scienter.[25]

The amended complaint adequately describes confidential witness #1's (CW-1) role and position such that the Court may consider CW-1's statements.[26]  The information pled falls within the scope of knowledge one would have if one were in CW-1's role.  CW-1 worked at Hallmark's main office in Dallas as a Claims Program Manager and "oversaw the day-to-day operations of claims, loss-reserve requests, the training of adjusters, audits of claims files, and the reporting of results to upper

---

[23] *Neiman v. Bulmahn*, 854 F.3d 741, 747 (5th Cir. 2017) (cleaned up).

[24] *Id.*

[25] *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 535 (5th Cir. 2008) (holding that "courts must discount allegations from confidential sources" in scienter analysis).

[26] Doc. No. 37 at 14.

management."[27]  According to these facts, Schulze adequately described CW-1 such that Schulze need not name CW-1.

Schulze describes confidential witness #2 (CW-2) in a similar fashion.  CW-2 worked for Hallmark for over five years preceding the Class Period.  CW-2 worked to evaluate "Hallmark's liability exposure on claims and lawsuits in the Primary Commercial Auto Insurance business line.  This involved determining payout amounts for case settlement resolution, determining the level of loss reserves, and completing loss reports."[28] Accordingly, Schulze adequately described CW-2 such that Schulze need not name CW-2.

Despite the inclusion of the confidential witnesses, the Court must discount all facts presented by the confidential witnesses.  This does not mean the Court ignores their statements, but when weighing the facts presented to determine if a strong inference of scienter exists, their statements provide less weight than if they were presented with names or by other facts.

*Passmore.*

The Court assesses Schulze's claims against Passmore first.  For the statements giving rise to the claims found in the pleading, Schulze must allege scienter with respect to

> the individual corporate official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like) rather

---

[27] *Id.*

[28] *Id.*

than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment.[29]

So, scienter must be pled with respect to each person making the false or misleading statement, and the plaintiff cannot rely on the general knowledge of a corporation's officers.  In other words, merely being a Chief Financial Officer does not confer the knowledge required for scienter.[30]  Fundamentally, scienter is a mental state, and the facts pled must give a strong inference of that mental state.[31]

Schulze fails to adequately plead scienter with respect to Passmore for all statements.   No facts from the amended complaint contend Passmore had any knowledge of the falsity of the statements he made or oversaw.  The confidential witnesses never mention Passmore.[32]   The only facts Schulze alleged about Passmore—other than mentioning which documents Passmore signed—indicate Passmore had control over published materials from Hallmark.[33]  But mere control over materials containing false or misleading statements does not establish scienter.[34]

So, the only way for Schulze's claims against Passmore to survive is by a showing of severe recklessness.   In this context, severe recklessness is "limited to

---

[29] *Southland*, 365 F.3d at 366.

[30] *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 432 (5th Cir. 2002) ("A pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within the company.").

[31] 15 USC §78u-4(b)(2)(A).

[32] Doc. No. 37 at 14–19.

[33] *Id.* at 9.

[34] *Cf. Abrams*, 292 F.3d at 432 ("A pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within the company.").

those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care."[35]  Again, Schulze failed to plead facts which indicate that Passmore had an *extreme* departure from the ordinary standards of care.  In total, the facts pled against Passmore are scant at best.  Accordingly, they are inadequate to establish scienter with respect to any statement Passmore made.   The Court therefore **DISMISSES** the claims against Passmore **WITHOUT PREJUDICE**.

*Anand.*

Schulze pleads that Anand had knowledge of the alleged fraud based on three occasions: (1) an office meeting, (2) CW-2's assertion that Anand directed the reserve lowering, and (3) a phone conversation CW-2 had with Milch. Schulze pleads, according to CW-1, that Anand would sometimes participate in meetings in his office which Milch and Stauber referred to as "reserve project" meetings.[36]  CW-1 claims to have personally participated in these meetings but does not describe what was said in any meeting or how Anand participated.[37]  Since CW-1 was in the "room where it happened," then CW-1 should describe at least one time when an arbitrary adjustment took place with Anand in the room of which Anand took notice. Alternatively, CW-1 could have described viewing or hearing Anand, Milch, and

---

[35] *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 866 (5th Cir. 2003) (quoting *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 408 (5th Cir. 2001)).

[36] Doc. No. 37 at 15.

[37] *Id.*

Stauber discussing the arbitrary lowering of the loss reserves.  But because Schulze fails to plead such facts, his claim fails.

Next, Schulze asserts that CW-2 stated that Anand directed the alleged illicit reserve lowering.[38]  But Schulze failed to plead facts which would indicate that CW-2 would know the alleged reserve lowering was done at the direction of Anand.  The Court needs factual particulars that would give rise to the notion that CW-2 would know that Anand directed the lowering practices described by the confidential witnesses.[39]  No facts contained in the pleading give rise to this notion.  Without pleading why CW-2 would be privy to this information, it is simply too great a leap of logic from the pled facts to say Anand directed the reserve practices.   Here, CW-2 does not mention, for example, a meeting or overheard comment that gave rise to this knowledge.  Therefore, the Court cannot consider this fact as it is too conclusory and lacks support.

Additionally, Schulze points to CW-2's recollection of a phone conversation CW-2 had with Milch from July 2020, "during which Milch confided that Stauber directed Milch to arbitrarily manipulate and lower loss reserves in relation to Hallmark's commercial auto claims and Milch further told CW-2 that Stauber told her that the lowering of loss reserves was a directive from Defendant CEO Naveen

---

[38] Doc. No. 37 at 19.

[39] *See In re Alamosa Holdings*, 382 F. Supp. 2d 832, 850 (N.D. Tex. Mar. 28, 2005) (Cummings, J.) ("Plaintiffs have surmised that Defendants knew of critical problems because of [their] positions and access to unspecified reports and meetings. Plaintiffs failed to plead any factual particulars to support such a leap in logic.").

Anand."[40]  This is the best piece of evidence Schulze has for scienter, but it is not enough.  Allegedly, Anand told Stauber, who told Milch, who told CW-2.  To evince scienter the facts alleged must give a strong inference of scienter.  This quadruple hearsay hardly gives any impression of scienter.[41]  Further, the quadruple hearsay was about Anand directing the lowering of loss reserves.  Finding ways to lower loss reserves is not illicit *per se* and does not show that Anand directed illicit activity.  To satisfy this standard, Schulze must plead additional facts that evince that Anand had knowledge of the policies.

Now the Court must take these allegations together to determine if a strong inference of scienter exists.  Because the instances cited above are the only ones

---

[40] Doc. No. 37 at 39.

[41] The Fifth Circuit discourages courts from giving much weight to confidential witness statements in the scienter analysis.  *Ind. Elec.*, 537 F.3d at 535 (holding that "courts must discount allegations from confidential sources" in scienter analysis).  When confidential witness statements contain hearsay and a plaintiff relies on that hearsay, courts have been skeptical even at the pleading stage.  *See Wu Winfred Huang v. EZCORP, Inc.*, 259 F. Supp. 3d 563, 578 (W.D. Tex. 2017) (Sparks, J.) (finding a confidential witness's statement unreliable as it was based on "hearsay-within-hearsay"); *Stockman v. Flotek Indus., Inc.*, No. CIV.A. H-09-2526, 2010 WL 3785586 at *19 (S.D. Tex. Sept. 29, 2010) (Lake, J.) (finding that statements from confidential witnesses based in hearsay are unreliable and cannot raise an inference of material falsity); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 997 n.4 (9th Cir. 2009), as amended (Feb. 10, 2009) ("[A] hearsay statement, while not automatically precluded from consideration to support allegations of scienter, may indicate that a confidential witness's report is not sufficiently reliable, plausible, or coherent to warrant further consideration[.]").  To be clear, the Court is not excluding the hearsay statement from the analysis.  And the Court is not sidelining the quadruple hearsay from a confidential source.  Such a role would be for the Court at trial with its evidentiary gatekeeping function.  But at this stage, the Court is duty-bound to assess weight.  *Cf.* Kristy Swanson: Simone Adamley, FERRIS BUELLER'S DAY OFF, (Paramount Pictures 1986) (Ms. Adamley tells the teacher that Mr. Bueller is sick because her "best friend's sister's boyfriend's brother's girlfriend heard from this guy who knows this kid who's going with the girl who saw Ferris pass out at 31 Flavors last night" and adds that it may be serious. Mr. Bueller was, of course, not sick—he was skipping school.).  Instead, the Court must consider the fact that the statement is quadruple hearsay when assigning the allegation weight in the scienter analysis.  The weight of any allegation can be enhanced or diminished by many factors, including the circumstances under which that information was obtained and the witness's reliability.  Here, the allegation's weight is already discounted because it is from a confidential witness and the fact the allegation comes as quadruple hearsay diminishes its reliability further.  Therefore, the weight of the allegation is miniscule.

where Schulze pleads Anand had knowledge of the reserve practices, the Court cannot find scienter based on these allegations.  Without establishing a strong inference of scienter, Schulze is trying to start a fire without oxygen.

**Statement-by-Statement.**

Next, the Court will consider the statements listed in Schulze's amended complaint by category.  The Court will begin with the press releases, then the Form-10K and SOX certification, Form-10 Q's, and finally the phone call.

*Press Releases.*

Each statement requires a showing of material misrepresentation or omission and scienter.[42]  The facts relied upon to claim the falsity of each press release are the violation of generally accepted accounting principles.  The violation of those principles, then, led to the press releases containing false estimates.  While the relevant, generally accepted accounting principles are set out in Schulze's complaint, the facts contained therein do not state with particularity that the defendants had scienter with respect to the estimates contained in the press releases.[43]  The Court recognizes that while these losses are estimates, those who conduct these calculations cannot simply make up estimates or pull them from a hat.  But none of the pled facts show the defendants had knowledge of the estimates contained in the press release which allegedly did not conform to the generally accepted accounting principles.

---

[42] *Mun. Emps' Ret. Sys. of Mich.*, 935 F.3d at 429 (citing *Dura Pharm., Inc.*, 544 U.S. at 341–42).

[43] Doc. No. 37 at 36–38.

Therefore, the only path to showing scienter must arise from severe recklessness that is so obvious that the defendants must have been aware of the danger of misleading buyers or sellers. Schulze did not plead that the errors seen by Anand were so obvious that Anand must have known they were errors or that Anand's actions showed an extreme departure from ordinary care.

More fundamentally, allegations based on generally accepted accounting principles are not sufficient to allege scienter in and of themselves.[44] In other words, alleging Hallmark violated generally accepted accounting principles does not evince scienter. Schulze must show something to the effect that the statements in the press releases presented such a danger of misleading buyers and sellers that Anand must have been aware, and that Anand showed an extreme departure from ordinary care.

*Form 10-K and SOX certification.*

Next is the Form 10-K and the associated SOX certification. Again, the underlying alleged falsity is the violation of the generally accepted accounting principles. For the same reasons it found this argument unconvincing as related to press releases, the Court finds it unconvincing with respect to the Form 10-K analysis.

The Form 10-K also claimed that the loss reserves were a result of the emergence of frequency and severity trends.[45] Schulze argues this is a false and

---

[44] *Fine v. Am. Solar King Corp.*, 919 F.2d 290, 297 (5th Cir. 1990) ("We agree that the mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter. The party must know that it is publishing materially false information, or the party must be severely reckless in publishing such information.").

[45] Doc. No. 37 at 21.

misleading statement because the loss reserves were actually "the result of Defendants' strategic manipulation and lowering of loss reserves in order to falsely inflate reported financial results."[46] This argument from Schulze claims that Anand omitted the information about how the claims were made, as there is no claim that the loss reserves were derived solely from increased frequency and severity trends.[47] In fact, the statement mentions that the estimates use valuations and statistical analyses.[48]

Because the statement makes no claim that the only method by which loss reserves were calculated were frequency and severity trends, the only way to show falsity is by showing an omission. As mentioned before, without knowledge, an omission must involve an extreme departure from the standards of ordinary care and present a danger of misleading buyers or sellers which is so obvious that the defendant must have been aware of it. No facts pled allege Anand had knowledge of the danger of an omission or that any omission took place; moreover, the danger from this omission is not so obvious that Anand *must* have been aware of it. Moreover, the statement itself hedges throughout.[49] The statement mentions several times that these figures were merely estimates and that there is great variability between estimates.[50] Further, it states that Hallmark believes the loss reserves are

---

[46] *Id.* at 22.

[47] *Id.*

[48] *Id.* at 21.

[49] *Id.*

[50] *Id.*

adequate.[51]  No facts pled adequately allege that Hallmark or its corporate controllers did not believe their reserves were adequate.  As such, there is no extreme departure from ordinary standards of care, nor have there been any facts pled which adequately allege scienter of Anand with respect to this statement.

The Form 10-K also notes that claim supervisors and managers performed the case evaluations.  As he does above, Schulze claims that the omitted fact here is that senior management changed the results of the case evaluations.  The Form also states that large loss exposures are "reviewed at least quarterly with senior management of the operating unit; and . . . monitored by Hallmark senior management."[52]  Again, because Schulze did not plead sufficient facts to show that Anand had knowledge of this omission or that there was a danger present, the only path forward is to claim the danger was so obvious that Anand *must* have been aware.  But the danger was far from clear.  The statement includes language that Hallmark management monitors the process and that the large loss exposures are reviewed at least quarterly.[53]  In fact, these statements imply that senior management is involved in the loss-reserves calculation, not that the loss-reserves calculation is completely divorced from the oversight and involvement of upper management.[54]  Accordingly, Schulze fails to plead adequate facts to sustain a claim arising from this statement.

---

[51] *Id.*

[52] *Id.* at 21–22.

[53] *Id.*

[54] *Id.*

The Form 10-K also claimed that the defendants engaged in conservative reserving practices.[55]  Schulze claims that the practices employed by the defendants were arbitrary and reckless, based on representations by the confidential witnesses. But Schulze's characterization of this statement cannot square with its text.  The statement is that Hallmark "seek[s] to maintain a strong balance sheet by employing conservative investment, reinsurance[,] and reserving practices . . . ."[56]  Ultimately, this statement is about what Hallmark *seeks* to do, not that the reserving practices it ultimately employed were conservative.  In other words, the claim is future-focused and aspirational rather than committing to how it handled the past.[57]  After all, the game of "hide and go seek" involves finding something you do not currently have rather than showing people what you previously found.  But securities fraud laws hold companies and officers to their statements, not what some wish their statements

---

[55] *Id.* at 22.

[56] *Id.*

[57] *Cf.* Geoffrey Rush: Capt. Hector Barbossa, PIRATES OF THE CARIBBEAN: THE CURSE OF THE BLACK PEARL (Walt Disney Pictures 2003), https://www.imdb.com/title/tt0325980/characters/nm0001691 (telling Ms. Elizabeth Swann that "the [pirate] code is more what you'd call 'guidelines' than actual rules.").

would have been.[58]  Thus, Schulze's claim that this statement is false or misleading because Hallmark did not actually engage in conservative reserving practices does not comport with the alleged false statement.  Schulze must address whether those who made the statement actually *sought* to employ conservative reserving practices.

The Form 10-K also claimed loss reserves were calculated using statistical projections.[59]  While Schulze pleads that the decision about the loss reserves was arbitrary, he never pleads that Hallmark claimed statistical projections were not used at all.  The statement also reads: "We estimate our reserve for unpaid losses and LAE by using *case-basis evaluations* and statistical projections, which include *inferences* from both losses paid and losses incurred."[60]  Schulze pleads no cognizable false statement.  Further, Schulze never pleads that the danger to investors was so

---

[58]  Take, for example, representations of two trucking companies.  *Compare*



*with*                                                                                                                          .
Werner boldly declares it hires "only safe and courteous drivers."  Swift promises less.  It contends that "award winning drivers are safe and courteous"—not that it hires them.  Here, Schulze would seek to hold Swift to Werner's promise.

[59]  *Id.* at 23.

[60]  *Id.* (emphasis added).

apparent that Anand must have known of that danger and pleads no facts demonstrating how that danger was so apparent.

The Form 10-K included a SOX certification from Anand.  Here, as elsewhere, there must be a strong inference of scienter.  To infer scienter from a SOX certification the plaintiff must plead "facts establishing that the officer who signed the certification had a reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other "red flags," that the financial statements contained material misstatements or omissions."[61]  Schulze alleges that Anand knew that the Form 10-K contained false statements.  To support this claim, Schulze alleges Anand knew of the loss-reserve meetings and contents thereof, which would give Anand reason to know the SOX certification contained false information.  For this, Schulze relies on confidential witness statements.  However, the Court cannot accept conclusions about what defendants knew or did not know without Schulze explaining a concrete basis for believing those conclusions.[62]  Schulze also failed to plead facts that Anand had reason to know or should have suspected falsity from glaring accounting irregularities. Accordingly, Schulze failed to adequately plead facts giving rise to a claim against Anand as to the SOX certification in the Form 10-K.

---

[61] *Indiana Elec.*, 537 F.3d at 545 (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006)).

[62] *See In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 720 (W.D. Tex. 2010) (Sparks, J.) (finding without sufficiently concrete basis for confidential witnesses' statements, scienter cannot be inferred).

Next, Schulze claims the Form 10-K did not fairly present the financial condition of the company.[63] There are no facts that indicate the Form 10-K was false in this respect or that Anand was aware or severely reckless with respect to the omission of a material fact. Further, regarding the claim that Anand knew the internal controls were flawed and did not evaluate disclosure controls and procedures, no facts pled from the confidential witnesses lead to a strong inference of scienter. The confidential witnesses show that Milch and Stauber were aware and intimately involved in the reduction of loss reserves, but nothing showed that Anand failed or that Anand knew internal controls were failing.[64]

*Form 10-Q's.*

Next are the Form 10-Q's. The May 8, 2019 Form 10-Q contained alleged violations of generally acceptable accounting principles; as discussed above, this allegation standing alone is insufficient to state a claim. Schulze alleges the May Form 10-Q omits disclosure of the "reserve project" practice of changing loss reserves.[65] That statement discussed the primary factors affecting the development of the previous year's reserve development, and this statement excluded the "reserve project." But a close reading of the statement reveals that the reserve development was partially offset by development.[66] This in no way states that the *only* function that offset reserve development was favorable development. Schulze failed to show

---

[63] Doc. No. 37 at 25.

[64] *Id.* at 15–16.

[65] *Id.* at 27.

[66] *Id.*

that Anand knew or should have known the reserves were manipulated as discussed in the section on Anand's knowledge.

The May Form 10-Q also contained SOX certifications from Anand.  The same analysis applies to these SOX certifications as to the prior SOX certifications in the Form 10-K.

Next up is the August Form 10-Q.  This Form made a substantially similar statement to the May Form 10-Q with respect to the primary factors affecting the segment's prior-accident-year reserve development.[67]  Accordingly, the same analysis applies to the August Form 10-Q as to the May Form 10-Q.  Furthermore, the SOX certification analysis from the Form 10-K applies to the SOX certification attached to the August Form 10-Q.  Accordingly, Schulze failed to sufficiently plead the claims derived from the SOX certifications.

The November Form 10-Q goes through the same allegations and SOX certifications as the August Form 10-Q.[68]  The same analysis applies to the November Form 10-Q as the August Form 10-Q.  Accordingly, the pleadings are insufficient.

*Phone Call.*

Finally, Anand represented that he believed Hallmark had adequate levels of loss reserves to address losses and close 2016 and 2017 claims.[69]  Schulze claims this statement from Anand represents that Hallmark adequately retained loss reserves. An accurate reading of the statement reveals otherwise.  The statement reads: " we

---

[67] *Id.* at 28.

[68] *Id.* at 30.

[69] *Id.* at 31.

feel [outstanding claims are] adequately reserved."[70]   The key word is "feel."  Schulze contends Anand was making a statement of fact about the adequacy of the loss reserved.  In reality, he made a statement about his *feeling*—or Hallmark's *feeling*— about the adequacy of the loss reserves.[71]  If Anand had made an objective statement of fact about Hallmark's loss reserves, then that statement may well have been materially false given what is known now.  However, Schulze fails to plead that Anand made such a statement of fact.  To attack the statement of *feeling* Anand made, Schulze would have to show scienter and material falsity with respect to Hallmark's feeling.  That is a difficult task.

In sum, Schulze inadequately pled each alleged false statement.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** the request to submit supplemental evidence and **GRANTS** the motion to dismiss **WITHOUT PREJUDICE**.  Schulze may file a second amended complaint within 28 days of the entry of this order for the limited purpose of addressing the pleading defects this order identifies.

**IT IS SO ORDERED** this 28th day of July 2021.


_____
BRANTLEY STARR

---

[70] *Id.*

[71] *See Barbossa*, *supra* n.59, at 17.

22

UNITED STATES DISTRICT JUDGE